STEWART T. OATMAN AND SHIRLEY A. OATMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
OATMAN v. COMMISSIONER
Docket No. 21821-81.
United States Tax Court
T.C. Memo 1982-684; 1982 Tax Ct. Memo LEXIS 49; 45 T.C.M. (CCH) 214; T.C.M. (RIA) 82684; November 29, 1982. *49 Stewart T. Oatman, pro se. Irene Scott Carroll, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned for trial to Special Trial Judge Darrell D. Hallett, pursuant to the provisions of General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts his report, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Respondent determined a deficiency in petitioners' 1978 Federal income tax in the amount of $384. The issue for decision is whether petitioners are entitled to a nonbusiness bad debt deduction. Petitioners were residents of Inglewood, California when the petition was filed. Respondent disallowed a nonbusiness bad debt deduction claimed on petitioners' 1978 return on the grounds that petitioners failed to establish the existence of a bona fide debt or, in the alternative, that if a debt did exist, it did not become worthless during the tax year 1978. In 1972 or 1973, petitioner Stewart Oatman (hereinafter petitioner) sent his brother $800 in cash after his brother through a friend, made an "urgent request" for that sum. Petitioner's *50 brother was then incarcerated in the military stockade at Fort Bragg. Petitioner had an understanding with his brother at the time that the money would be repaid when his brother "got on his feet". Petitioner's brother was in and out of prison at various times up through 1978, when his circumstances appeared to change. He then married, had a job, and was on work release from prison.However, in mid-1978 he violated restrictions of his work release and was returned to prison. At that point, there was no reasonable prospect of petitioner's brother repaying the $800. Although numerous factors bear upon the question as to whether an advancement of funds is in connection with a bona fide debt, resolution of the question ultimately depends upon whether the parties had a bona fide intention that the advance be repaid. This is the case even where the parties involved are related, although in that situation the transaction should be closely scrutinized to determine whether it in fact amounted to a gift rather than a loan. , affd. per order (4th Cir. Sept. 1, 1971). Based upon petitioner's credible testimony, *51 we conclude and have found as a fact that petitioner paid the sum of $800 to his brother with the genuine understanding that the amount would be repaid. We also conclude that there was no reasonable prospect of repayment as of December 31, 1978, and that petitioner has adequately established that the debt was worthless and qualifies for deduction as a nonbusiness bad debt as of that time. As the Supreme Court stated in "The standard for determining the year for deduction of a loss is thus a flexible, practical one, varying according to the circumstances of each case." Applying that standard here, we find the circumstances establish that although petitioner had reason to expect his brother would "mend his ways" and become financially able to repay prior to 1978, his return to prison in 1978 extinguished that likelihood. Decision will be entered under Rule 155.